**In re Mary Rhone DAVIS, Debtor.**

**Bankruptcy No. 88–02172.**

United States Bankruptcy Court,
S.D. Alabama.

Oct. 20, 1989.

---

Michael Scheuermann, Mobile, Ala., for debtor.

Ann B. Curtright, Mobile, Ala., for Pearl Motors Inc.

### ORDER

ARTHUR B. BRISKMAN,
Bankruptcy Judge.

This matter came on for hearing on the Debtor's Notice of Rescission of Reaffirmation Agreement and Motion to Withdraw Notice of Intent to Reaffirm and Reaffir-

---

mation Agreement with Pearl Motors, Inc. The Court finds, concludes and orders as follows.

## FINDINGS OF FACT

1. Mary Rhone Davis (hereafter Debtor) filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., in this Court on December 8, 1988.

2. On March 9, 1989, Debtor executed, and filed with the Court a reaffirmation agreement, reaffirming indebtedness owing to Pearl Motors, Inc. (hereafter Pearl). The subject matter of this indebtedness was a 1984 Ford Tempo purchased by Debtor and financed by Pearl on November 28, 1988.

3. Debtor also executed a reaffirmation agreement on March 6, 1989, reaffirming indebtedness owing to Gulf Furniture Stores, Inc.

4. On July 26, 1989, the Court granted a discharge to Debtor; discharging her from all dischargeable indebtedness, nullifying judgments and enjoining her creditors from instituting or continuing any action to collect any of the discharged debts.

5. On August 17, 1989, Debtor filed notice of her intent to rescind the reaffirmation agreement with Pearl and motion to withdraw notice of her intent to reaffirm.

6. A hearing pursuant to 11 U.S.C. § 524(d) (1988 ed.) was held on August 21, 1989. At the hearing, Debtor was informed that neither bankruptcy law nor nonbankruptcy law required her to reaffirm her indebtedness. Debtor was also informed of the legal effect and consequences of entering into the respective reaffirmation agreements.

## CONCLUSIONS OF LAW

This matter presents no factual disputes. Debtor executed a reaffirmation agreement with Pearl subsequent to the filing of her bankruptcy petition but prior to being granted a discharge. Subsequent to receiving her discharge, but prior to the hearing held pursuant to 11 U.S.C. § 524(d) (1988 ed.), Debtor filed with the Court notice of her intent to rescind the reaffirmation agreement with Pearl.[1] Pearl objected; averring the attempted rescission was untimely.

If a debtor desires to reaffirm indebtedness, the consideration for which is based on a debt that is dischargeable, the court "shall" hold a hearing. 11 U.S.C. § 524(d) (1988 ed.). The purpose of the hearing is to inform the debtor that neither bankruptcy law nor nonbankruptcy law requires a debtor to enter into such an agreement and to inform the debtor of the legal effect and consequences of the agreement. In theory, after being advised by counsel and after being admonished by the court, a debtor will be better able to avoid reaffirming indebtedness which may inhibit the enjoyment of the *fresh start* the Bankruptcy Code provides.

Under the statutory scheme, however, the court cannot hold the hearing until after the discharge has been granted. 11 U.S.C. § 524(d) (1988 ed.).[2] Unless the debtor files the reaffirmation agreement with the court (and gives notice to the affected creditor) within sixty days prior to being discharged, the discharge terminates the debtor's ability to rescind under § 524(c)(4). More often than not, reaffirmation agreements are filed with the court in excess of sixty days prior to the granting of a discharge. Consequently, in most instances the admonishments serve no useful purpose since the debtor can no longer rescind the agreement once the discharge has been granted. The efficacy of the § 524(d) hearing, therefore, can be likened to postconviction *Miranda warnings.*

As originally enacted, § 524(c)(2) enabled a debtor to rescind a reaffirmation agreement within thirty days after it became

---

1. Debtor also executed a reaffirmation agreement with Gulf Furniture Stores, Inc., which was also filed with the Court on March 9, 1989.

2. Furthermore, in pertinent part Bankruptcy Rule 4008 provides:

Not more than 30 days following the entry of an order granting or denying a discharge ... and on not less than 10 days notice to the debtor and trustee, the court shall hold a hearing as provided in § 524(d) of the Code.

enforceable.[3] Also, the original language of § 524(c)[4] of the Bankruptcy Code formerly required the court to approve reaffirmation agreements the consideration for which was based on a consumer debt not secured by real property.[5] The 1984 amendments to § 524, however, dramatically changed the reaffirmation process. Now, a debtor can only rescind a reaffirmation agreement by giving notice to the creditor with whom it has reaffirmed indebtedness any time prior to receiving its discharge or within sixty days after the agreement is filed with the court. See 11 U.S.C. § 524(c)(4) (1988 ed.). Furthermore, the court must now only approve agreements when the debtor was not represented by an attorney during the course of negotiating the reaffirmation agreement. See 11 U.S.C. § 524(c)(6) (1988 ed.).[6]

Congress' inclusion of the bankruptcy court in the reaffirmation process was the result of its reservations about reaffirmation agreements.[7] Congress sought to reduce its perceived disparity in bargaining positions between debtors and creditors. The court's designated role was to protect unsophisticated debtors from overreaching sophisticated creditors who might impair the debtor's ability to achieve a *fresh start*.[8] The matter now before the Court, however, aptly reveals how the subsequent amendments to § 524[9] have eviscerated an element of the protections Congress labored to accord debtors and transformed the § 524(d) hearing into a superfluous formality.

3. Bankruptcy Reform Act of 1978 Pub.L. No. 95–598, § 524(c)(2), 92 Stat. 2682 (1978) (codified as amended at 11 U.S.C. § 524(c)(4) (1984)).

4. 11 U.S.C. § 524(c)(4) (1978), amended by 11 U.S.C. § 524(d) (1984) (codified as amended at 11 U.S.C. § 524(c)(6) (1984)). See *infra* note 9.

5. In approving reaffirmation agreements, the bankruptcy court had to determine whether a reaffirmation agreement imposed an undue hardship on the debtor or one of its dependents and whether the agreement was in the best interest of the debtor unless the court determined the agreement was entered into in good faith and in settlement of litigation under § 523 or for redemption under § 722. 11 U.S.C. § 524(c)(4) (1978), amended by 11 U.S.C. § 524(d) (1984).

6. Now, when called upon to approve such an agreement, the court must only determine whether the agreement imposes an undue hardship on the debtor or a dependent of the debtor and whether it is in the best interest of the debtor.

7. In enacting the Bankruptcy Code, Congress expressed concern over the propriety of reaffirmation agreements. Some supported a ban on their use. They argued, "[t]o the extent reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 163, reprinted in 1978 U.S.Code Cong. & Admin.News at 5787, 6124. This faction, which included Senator Kennedy (D–Mass.), saw reaffirmation agreements as tools by which sophisticated creditors could manipulate unsophisticated debtors. Senator Kennedy supported his stance by adding, "[t]he primary justification for allowing bankruptcy discharges of debt is the fresh start it

provides to persons who have become so overburdened with debt that they are unable to function energetically and effectively in society. Reaffirmations are totally at war with this objective." 124 Cong.Rec. 28282 (Sept. 7, 1978).

Likewise, there was significant support for the use of reaffirmation agreements. Senators Bartlett (R–Okla.), Thurmond (R–S.C.) and Hatch (R–Utah) joined in proposing legislation which would have enabled debtors to reaffirm indebtedness subject to the debtor giving notice to affected creditors within thirty days of executing the reaffirmation agreement. See 124 Cong.Rec. 28262 (Sept. 7, 1978). This faction argued that a ban on the use of reaffirmation agreements would "thwart" the fresh start goal of the bankruptcy laws. Those favoring the use of reaffirmation agreements opposed restrictions on the debtor's freedom of choice and argued adamantly towards this end. They pointed to benefits accruing to those who reaffirmed indebtedness. They also pointed to the detrimental effects likely to be caused by a ban on the use of reaffirmation agreements. Here, for instance, the subject matter of Debtor's reaffirmation agreement with Pearl is an automobile. If Debtor was prohibited from reaffirming the debt, and if she was forced to surrender the automobile, her ability to maintain gainful employment might be impaired.

8. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 164, reprinted in 1978 U.S.Code Cong. & Admin. News at 6125.

9. Section 524(c) and § 524(d) were amended in 1984 by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333. Section 524(d) was amended again in 1986 by the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088.

**704**

As laudable as Congress' goals were, the hearing held pursuant to § 524(d) no longer serves the purpose Congress intended. Since in most instances the court is no longer involved in the approval of reaffirmation agreements, the purpose to be served by § 524(d) has been frustrated. Here, the Debtor was represented by counsel. In addition to being advised by counsel she was admonished by the Court, albeit after she was granted a discharge. Yet, now the Debtor seeks to rescind the reaffirmation agreement with Pearl. Since her attempted rescission is more than sixty days from the filing of the agreement with the Court and subsequent to the granting of her discharge, the agreement cannot be rendered unenforceable under 11 U.S.C. § 524(c)(4) (1988 ed.). While the agreement may now impose an undue hardship on Debtor, the Court is powerless to provide her with a remedy.

The desire to provide the Debtor with the *fresh start* Congress intended is curtailed by the Court's appreciation for its role in our system of government.[10] Any empathy for Debtor does not shroud the Court's recognition of its function. It is not the Court's province to change laws the efficacy of which it questions; rather it is within Congress' dominion.

Accordingly, since Debtor failed to give Pearl notice of her intent to rescind the reaffirmation agreement within sixty days subsequent to its being filed with the court or prior to being granted a discharge, the agreement is enforceable. Therefore, Pearl's objection is due to be sustained and Debtor's motion to rescind this reaffirmation agreement is due to be denied.

ORDER

Now, therefore, it is ORDERED, ADJUDGED and DECREED that the objection of Pearl Motors, Inc., to the notice of intent to rescind the reaffirmation agreement with Pearl Motors, Inc. filed by the

Debtor, Mary Rhone Davis, is SUSTAINED; and it is further

ORDERED, ADJUDGED and DECREED that the motion of Debtor, Mary Rhone Davis, to rescind her reaffirmation agreement dated March 9, 1989, reaffirming indebtedness owing to Pearl Motors, Inc. is DENIED; and it is further

ORDERED, ADJUDGED and DECREED that the reaffirmation agreement executed by Debtor, Mary Rhone Davis, reaffirming indebtedness owing to Pearl Motors, Inc., is enforceable by the terms thereunder to the extent enforceable under the laws of the State of Alabama.

---

**10.** "We seek a person who understands and appreciates the majesty of our system of government—a person who understands that federal law is changed by Congress, not by the Court; who understands that the Constitution is changed by amendment, not by the Court ..."

See *Nomination of Sandra Day O'Connor to Serve as an Associate Justice of the Supreme Court of the United States: Hearing before the Committee on the Judiciary, United States Senate,* 97th Cong. 1st Sess. at 2 (1981) (Statement of Chairman Strom Thurmond (R–S.C.)).