ORDER AND AMENDED OPINION
 

 KELLEHER, District Judge:
 

 ORDER
 

 Appellee’s petition for rehearing filed on June 25, 2001, is hereby granted without further oral argument. Judge O’Scannlain and Judge Fletcher have voted to deny Appellee’s petition for rehearing en banc. Judge Kelleher so recommends. The amended opinion is filed herewith.
 

 OPINION
 

 We have before us the question of whether the district court erred in dismissing appellant-debtors’ complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis that reaffirmation and settlement agreements entered into by appellant-debtors during prior bankruptcy proceedings bar their later action against the same creditor for alleged violations of the automatic stay and discharge provisions of the U.S. Bankruptcy Code. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 

 I.
 

 Appellants Carol M. Rein, Paul M. Dris-coll, William F. Croce and Tina W. Croce, and Paul Frenette (“Rein,” “Driscoll,” “Croces,” and “Frenette,” respectively, and “Appellants,” collectively) were debtors in unrelated Chapter 7 bankruptcy proceedings who owed Providian Financial Corporation (“Providian”) various amounts in credit card debts (“Providian Debt”). After Appellants filed for bankruptcy,
 
 [1]
 
 
 *898
 
 Providian mailed letters to each of Appellants’ attorneys, asserting its belief that portions of Appellants’ respective credit card debts were nondischargeable because they were incurred through fraud. Each Appellant was requested to enter into an agreement reaffirming the amount at issue.
 

 Rein, Driscoll, and Croces refused to enter into reaffirmation agreements, and Providian instituted adversary proceedings against them in their respective bankruptcy actions. Represented by counsel, Rein, Driscoll, and Croces ultimately negotiated settlements with Providian, wherein they stipulated that the Providian Debt was nondischargeable and agreed to pay some or all of the amounts at issue.
 

 Frenette, also represented by counsel, signed a reaffirmation agreement on May 19, 1997. The reaffirmation agreement was filed with the bankruptcy court. Pro-vidian asserts that a discharge exempting the Providian Debt was subsequently granted on June 19, 1997.
 
 [2]
 
 On March 24, 1998, the bankruptcy court discharged the trustee and closed the bankruptcy case.
 

 On October 21, 1998, Appellants filed a class action lawsuit against Providian in the United States District Court for the Northern District of California, alleging that Providian’s distribution of reaffirmation letters and institution of adversary proceedings constituted violations of the automatic stay and discharge provisions of the Bankruptcy Code (11 U.S.C. §§ 362 and 524(a)(2), respectively). The district court dismissed the complaint with prejudice on the basis of preclusion and lack of standing.
 

 II.
 

 We first address the district court’s ruling that Appellants lacked standing to bring their claims. In then-complaint, Appellants sought to enjoin Providian from engaging in alleged violation of the stay and discharge provisions. However, as the district court pointed out, the automatic stay had terminated and Providian had completed its collection efforts by the time Appellants filed suit in district court, rendering their claims for injunctive relief moot. Nonetheless, Appellants have standing. Appellants also sought monetary damages against Providian, and even such a generalized claim for monetary damages is sufficient to maintain justiciability.
 
 Shadduck v. Rodolakis,
 
 221 B.R. 573, 579 (Bankr.D.Mass.1998) (holding that the plaintiff had standing even though automatic stay had terminated and his claims for declaratory and injunctive relief were moot, because he also sought actual damages for violation of the automatic stay). Hence, the district court erred in dismissing Appellants’ claims for lack of standing.
 

 III.
 

 Appellants argue that the district court erred in holding that their claims were barred by the doctrines of res judicata and collateral attack. Because the analysis differs with respect to Frenette, we accord his claims separate treatment.
 

 A.
 

 Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised
 
 *899
 
 in that action.
 
 See In re Baker,
 
 74 F.3d 906, 910 (9th Cir.1996). Claim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits.
 
 Owens v. Kaiser Found. Health Plan, Inc.,
 
 244 F.3d 708, 713 (9th Cir.2001);
 
 Siegel v. Federal Home Loan Mortgage Corp.,
 
 143 F.3d 525, 528-29 (9th Cir.1998).
 

 The first two res judicata factors are satisfied as to Frenette. First, the parties are identical. A reaffirmation agreement was entered into by and between Providian and Frenette. Frenette subsequently brought his § 362 and § 524(a)(2) claims against Providian in district court. Second, there is no dispute that the bankruptcy court was a court of competent jurisdiction.
 

 However, the third factor for res judica-ta is not satisfied: there has been no final judgment on the merits. The reaffirmation agreement signed by Frenette and filed with the bankruptcy court is unaccompanied by any court order approving the agreement, excepting the Providian Debt from discharge, or otherwise declaring the Providian Debt nondischargeable. Indeed, the record is silent as to the disposition of the Providian Debt, as the discharge order itself is not part of the record.
 
 [3]
 

 11 U.S.C. § 524(c) permits a bankruptcy debtor to reaffirm a discharge-able debt.
 
 [4]
 
 Pursuant to § 524(c)(2)(B),
 
 *900
 
 nothing in the Bankruptcy Code or in non-bankruptcy law requires a debtor to reaffirm a debt. And pursuant to § 524(c)(3)(A), a reaffirmation agreement must be a “voluntary agreement” of the debtor. As such, unless the court reviews and approves the reaffirmation agreement by an order of the court, the fact that a debtor has voluntarily entered into a reaffirmation agreement neither proves nor disproves the question of whether the debt that is the subject of the reaffirmation agreement would have been held to be nondischargeable if the creditor had filed a nondischargeability adversary proceeding regarding that debt and the court had adjudicated that adversary proceeding. Because of its voluntary nature, a reaffirmation agreement that is not approved by a subsequent court order can have no pre-clusive effect regarding the question of whether the debt reaffirmed would have been held to be nondischargeable if the nondischargeability issue had been litigated. Thus, a reaffirmation agreement unaccompanied by a court order is.not a final judgment on the merits and cannot be given preclusive effect.
 
 See In re Johnson,
 
 255 B.R. 696, 698 (Bankr.E.D.Mich.2000) (holding that stipulation of nondis-chargeability in a prior Chapter 7 bankruptcy proceeding unaccompanied by a court order had no preclusive effect in a subsequent Chapter 7 case).
 
 [5]
 

 Providian argues unpersuasively that our conclusion herein conflicts with our ruling in
 
 Siegel v. Federal Home Loan Mortgage Corp.,
 
 143 F.3d 525 (9th Cir.1998). In
 
 Siegel,
 
 we held that a bankruptcy court’s implicit allowance of a claim is a final judgment giving rise to res judicata, even though there is no “actual separate order of some kind regarding the claim in question.” 143 F.3d at 530.
 
 Siegel
 
 involves a different section of the Bankruptcy Code and it is clearly distinguishable.
 

 In
 
 Siegel,
 
 we had to decide whether claims that are “deemed allowed” pursuant to 11 U.S.C. § 502(a) should be given res judicata effect even though a separate order formally “allowing” the claim is never issued.
 
 [6]
 
 In that case, the creditor filed § 501 proofs of claim relating to the two properties at issue in the bankruptcy proceeding.
 
 See id.
 
 at 528. The debtor did not file objections; neither did the bankruptcy trustee.
 
 Id.
 
 As a result, the claim was “deemed allowed” pursuant to § 502(a).
 
 Id.
 
 at 530.
 
 [7]
 

 As we explained:
 

 [W]hat ... can “deemed allowed” mean? It must mean deemed allowed by the court. In other words, it is deemed that the court has acted on the claim and ordered allowance. Congress has relieved the court of the task of actually endorsing its allowance of the claim on that document or on a separate form or
 
 *901
 
 order.... It would be most peculiar if the effect was that uncontested and allowed claims had less dignity for res judicata purposes than a claim which at least one party in interest thought was invalid or contestable in whole or in part. We see no reason to embrace that rather peculiar result. Rather, we see § 502(a) as a recognition of the fact that people can raise objections and litigate them, if they see something wrong with a claim, but if they do not, the claim will be treated in all respects as a claim allowed by the court itself.
 

 Id.
 

 In comparison, in the context of § 524(c) reaffirmation agreements, Congress did not include a similar “deemed allowed” language. Indeed, court approval of re affirmation agreements executed by debtors represented by counsel is not even required by the statute.
 
 See
 
 11 U.S.C. § 524(c)(6)(A) (requiring court approval only when the debtor is not represented by counsel);
 
 [8]
 

 see also In re Grinnell,
 
 170 B.R. 495, 495 (Bankr.D.R.I.1994) (“[T]he 1984 amendments [to § 524] relieved bankruptcy courts of the responsibility of ruling on reaffirmation agreements [as] Congress shifted the duty to debtor’s counsel to determine whether the agreement represents a fully informed and voluntary agreement by the debtor.”) (internal quotation marks omitted);
 
 In re Davis,
 
 106 B.R. 701, 702-03 (Bankr.S.D.Ala.1989) (noting that prior to the 1984 amendments, bankruptcy courts had to approve all reaffirmation agreements concerning unsecured consumer debts).
 
 [9]
 
 Therefore, we decline to construe § 524(c) in the way Providian suggests, which would effectively require us to insert “deemed approved” into the statute when approval by a court is not necessary.
 

 We are also not persuaded by Providi-an’s argument that our ruling herein would lead to a peculiar outcome, namely, that reaffirmation agreements between creditors and
 
 unrepresented
 
 debtors that adhere to the requirements of § 524(c) (and therefore obtain court approval) will be given res judicata effect, while reaffirmation agreements between creditors and
 
 represented
 
 debtors can never be given res judicata effect. The dispositive factor here is not the fact that Frenette was represented by counsel, but the fact that the record does not show that this pre-adver-sary proceeding settlement agreement was actually reviewed and approved by the bankruptcy court. Absent some indicia of judicial action,
 
 [10]
 
 Frenette’s agreement that
 
 *902
 
 the Providian Debt was nondischargeable is not res judicata in the present case,
 

 Accordingly, the district court erred in holding that Frenette’s claims were barred by res judicata.
 

 B.
 

 Frenette also contends that the district court erred in holding that his claims were barred on an alternative ground — the collateral attack doctrine.
 

 The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts.
 
 See Celotex Corp. v. Edwards,
 
 514 U.S. 300, 313, 115 S.Ct. 1493,131 L.Ed.2d 403 (1995) (“We have made clear that [i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected.”) (internal quotation marks omitted) (alteration in original). Here, the collateral attack doctrine does not apply to Frenette because his claims were never addressed by a prior order or judgment. He signed the reaffirmation agreement and terminated any Chapter 7 dischargeability issue with regard to the Providian Debt. Moreover, and as a consequence, no adverse proceeding ever was instituted against him.
 
 [11]
 

 Because we find that Frenette has standing and that his claims are not barred by res judicata or the collateral attack doctrine, we reverse the ruling of the district court with respect to Fren-ette’s claims.
 

 IV.
 

 We now address whether the district court erred in holding that Rein, Croces, and Driscoll’s claims were barred.
 

 A.
 

 We begin with the res judicata analysis. As with Frenette, the first two res judicata factors are satisfied with regard to Rein, Croces, and Driscoll. First, the parties are identical. Settlement agreements were entered into by and between Providian and Rein, Croces, and Driscoll in compromise of the adverse proceedings filed by Providian. Rein, Croces, and Driscoll subsequently brought their § 362 and § 524(a)(2) claims against Providian in district court. Second, there is no dispute that the bankruptcy court was a court of competent jurisdiction.
 

 Rein, Croces, and Driscoll’s prior bankruptcy actions were litigated to a final
 
 *903
 
 judgment on the merits. Their settlement agreements, reaffirming the pre-petition debts, were approved by the respective bankruptcy courts and included as part of the final judgments issued in Rein, Croces, and Driscoll’s Chapter 7 proceedings.
 
 [12]
 
 A judicially approved settlement agreement is considered a final judgment on the merits.
 
 In re Dominelli,
 
 820 F.2d 313, 316-17 (9th Cir.1987) (holding that the settlement and dismissal of the trustee’s usury claim against lienholder operates as res judicata to bar appellant from raising an usury claim on behalf of the estate against the same lienholder);
 
 see Hoxworth v. Blinder,
 
 74 F.3d 205, 208 (10th Cir.1996);
 
 see also In re Medomak Canning,
 
 922 F.2d 895, 900 (1st Cir.1990);
 
 In re Klasinski,
 
 215 B.R. 181, 183 (Bankr.C.D.Ill.1997) (judgment order approving settlement that included a stipulation of nondischargeability given preclusive effect even though the order did not contain a specific finding of nondisehargeability). We therefore proceed to examine whether the final prong of the claim preclusion analysis is satisfied with regard to Rein, Croces, and Driscoll.
 

 We consider four criteria in determining whether the same claim or cause of action was involved in both suits: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transaction or nucleus of facts.
 
 C.D. Anderson & Co., Inc. v. Lemos,
 
 832 F.2d 1097, 1100 (9th Cir.1987).
 

 Rights and interests established in Rein, Croces, and Driscoll’s prior bankruptcy court judgments would be destroyed or impaired by prosecution of their district court claims. Rein, Croces, and Driscoll assert that the settlement agreements are void and unenforceable because violations of the automatic stay are void, and the settlement agreements were procured through such a violation. Further, Rein, Croces, and Driscoll sought to recover “compensatory damages, including all principal and finance charges paid under the unenforceable [settlement] agreements.” Thus, adjudication of Rein, Croces, and Driscoll’s claims involves relitigation of the dischargeability of the Providian Debt.
 

 Further, the two suits arise out of the same transaction or nucleus of facts. It has been held that “[i]n general, garden variety lender liability claims alleging wrongful lending or collections practices arise out of the same transaction as the lenders’ causes of actions [sic] to collect on the loans.”
 
 Sanders v. First Nat’l Bank,
 
 114 B.R. 507, 513 (M.D.Tenn.1990).
 
 [13]
 
 A determination of this last factor in the affirmative has been held sufficient to es
 
 *904
 
 tablish that the same claim or cause of action was involved in both suits.
 
 See C.D. Anderson & Co.,
 
 832 F.2d at 1100 (noting that “[t]he last of these criteria [regarding whether the two suits arise out of the same transaction or nucleus of facts] is the most important” and holding that arbitration award denying customer’s claim against brokerage company for forgiveness of debt had preclusive effect in brokerage company’s action seeking payment of that debt, where both suits arose out of trading that occurred in connection with customer’s account).
 
 [14]
 
 Thus, the district court did not err in ruling that Rein, Croces, and Dris-coll’s claims were barred by res judicata.
 

 B.
 

 We now address the contention that the settlements entered into between Rein, Croces, and Driscoll and Providian are void because Providian procured the settlements by instituting adversary proceedings in violation of the automatic stay.
 

 Rein, Croces, and Driscoll are correct that actions taken in violation of the automatic stay are void.
 
 In re Schwartz,
 
 954 F.2d 569, 571 (9th Cir.1992). However, Rein, Croces, and Driscoll are in error in arguing that Providian violated the automatic stay by filing adversary proceedings against them. Providian filed separate adversary proceedings against Rein, Croces, and Driscoll in the bankruptcy court that was presiding over the particular debtor’s bankruptcy case. Each of the three adversary proceedings was a “non-dischargeability” adversary proceeding, brought pursuant to 11 U.S.C. § 523(a)(2), seeking a judgment holding the credit card debt owed to Providian by the particular debtor to be “nondisehargeable” in the particular debtor’s bankruptcy case for fraud on the basis that the debtor in question made the credit card charges with no intent to pay Providian for those charges.
 

 Bankruptcy courts have exclusive jurisdiction over nondischargeability actions brought pursuant to 11 U.S.C. § 523(a)(2), (4), (6) and (15).
 
 See In re Goscicki,
 
 207 B.R. 893, 897-98 (B.A.P. 9th Cir.1997);
 
 In re Aldrich,
 
 34 B.R. 776, 779-80 (B.A.P. 9th Cir.1983);
 
 In re Franklin,
 
 179 B.R. 913, 920 (Bankr.E.D.Cal.1995). Although creditors generally may file suit against debtors in state court, and must obtain relief from the stay to do so, Provi-dian did not have this option with regard to its § 523(a)(2) claims because state courts lack jurisdiction to adjudicate § 523(a)(2) actions.
 
 [15]
 
 As a result, bankruptcy court was the only forum where Providian could (and did) file its § 523(a)(2) actions.
 

 We have repeatedly held that filing a nondischargeability action in the bankruptcy court where the bankruptcy case is pending does not violate the automatic stay.
 
 See, e.g., In re Roxford Foods,
 
 
 *905
 

 Inc.,
 
 12 F.3d 875, 878 (9th Cir.1993) (“ ‘[T]he automatic stay [is] inapplicable to a suit commenced in the same court where the bankruptcy was pending.’ ”);
 
 In re Teerlink Ranch Ltd.,
 
 886 F.2d 1233, 1237 (9th Cir.1989) (“The stay does not operate against the court with jurisdiction over the bankrupt.”). Hence, the district court did not err in giving preclusive effect to Rein, Croces, and Driscoll’s court-approved settlement agreements.
 

 REVERSED as to Appellant Frenette; AFFIRMED as to Appellants Rein, Croces, and Driscoll.
 

 [1]
 

 . Rein filed for bankruptcy in the United States Bankruptcy Court, District of Minnesota on April 11, 1997; Croces filed in United States Bankruptcy Court, District of Rhode Island on July 23, 1997; Driscoll filed in United States Bankruptcy Court, District of Rhode Island on November 27, 1996; and Frenette filed in the United States Bankruptcy Court, District of Rhode Island on February 19, 1997.
 

 [2]
 

 . Neither Frenette's bankruptcy petition (with attached schedule listing the debts he seeks to discharge) nor the discharge order is part of the record. Therefore, we are unable to confirm whether the discharge order made any reference to the Providian Debt.
 

 [3]
 

 . The party asserting preclusion has the burden of establishing what was litigated in the prior action and determined by the prior judgment.
 
 See Hydranautics v. FilmTec Corp.,
 
 204 F.3d 880, 885 (9th Cir.2000);
 
 Shapley v. Nevada Bd. of State Prison Comm'rs,
 
 766 F.2d 404, 407-08 (9th Cir.1985).
 

 [4]
 

 . Section 524(c) provides, in relevant part:
 

 An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
 

 (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
 

 (2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
 

 (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
 

 (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
 

 (A) such agreement represents a fully informed and voluntary agreement by the debtor;
 

 (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
 

 (C) the attorney fully advised the debtor of the legal effect and consequences of—
 

 (i) an agreement of the kind specified in this subsection; and
 

 (ii) any default under such an agreement;
 

 (4) the debtor has not rescinded such agreement at any time prior to discharge Or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; [and]
 

 (5) the provisions of subsection (d) of this section have been complied with[.]
 

 The reaffirmation agreement signed by Fren-ette and his counsel contains the statements required by § 524(c).
 

 [5]
 

 .Compare In re Laing,
 
 31 F.3d 1050, 1051—52 (10th Cir.1994) ("The final judgment expressly declared the debt nondischargeable. Although by agreement rather than litigation, that order has the same effect as a district court’s judgment on the merits. The plan’s stipulation, along with the order declaring the debt nondischargeable, binds Laing regardless of whether that provision is inconsistent with the bankruptcy laws because it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed.”) (internal quotation marks and citations omitted).
 

 [6]
 

 . "A claim or interest, proof of which is filed under section 501 of this title, is
 
 deemed allowed,
 
 unless a party in interest ... objects.” 11 U.S.C. § 502(a) (emphasis added).
 

 [7]
 

 . A claim, once filed, will either be allowed or disallowed by the court.
 
 See
 
 11 U.S.C. § 502. If objections are filed, the bankruptcy court will hold a hearing and formally allow the claim to the extent proper.
 
 See
 
 11 U.S.C. § 502(b).
 

 [8]
 

 . A reaffirmation agreement between a creditor and unrepresented individual debtor is valid and enforceable only if "the court approves such agreement as — (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and (ii) in the best interest of the debtor.” 11 U.S.C. § 524(c)(6);
 
 see also
 
 11 U.S.C. § 524(d) (hearing requirement).
 

 [9]
 

 . We note that notwithstanding the fact that § 524(c) no longer
 
 requires
 
 bankruptcy court approval of reaffirmation agreements involving debtors represented by counsel, several bankruptcy courts have recognized that they retain the power to approve or disapprove such reaffirmation agreements.
 
 See, e.g., BankBoston, N.A. v. Nanton,
 
 239 B.R. 419, 424-26 (D.Mass.1999) (finding that the bankruptcy courts possess an independent obligation to review reaffirmation agreements to ensure that the elements of § 524(c) are satisfied);
 
 In re Reinertson,
 
 241 B.R. 451, 453 (9th Cir.BAP1999);
 
 In re Lindley,
 
 216 B.R. 811, 818 (Bankr.N.D.Ill.1998);
 
 In re Izzo,
 
 197 B.R. 11, 12 n. 2 (Bankr.D.R.I.1996).
 

 [10]
 

 .Providian reminds us that counseled reaffirmation agreements must meet statutory conditions
 
 (e.g.,
 
 notice of rescission, statement of lack of undue hardship and filing requirements), in order for them to be enforceable. Therefore, Providian argues that such agreements are not merely private contracts with no judicial imprimatur. However, the fact that a reaffirmation agreement under
 
 *902
 
 § 524(c) must meet additional elements for the agreement to be enforceable — elements beyond the traditional ones required for contracts
 
 {e.g.,
 
 legal capacity to contract, mutual consent and sufficient consideration) — without more, does not transform such an agreement into a court-approved settlement agreement. The additional requirements reflect Congress' recognition that additional safeguards are necessary to help assure that the agreement to reaffirm a pre-petition debt is voluntary on the debtor’s part, and the debtor does so knowingly and in his own best interest.
 
 See In re Turner,
 
 156 F.3d 713, 718 (7th Cir.1998).
 

 [11]
 

 . We note that there is an interesting issue regarding what legal effect, if any, Frenette's failure to seek rescission of the filed reaffirmation agreement within the time permitted under § 524(c)(4) should have on any of his claims in this lawsuit. The parties do not dispute that the reaffirmation complied with all the statutory conditions. Therefore, after the time for rescission has passed, the agreement becomes an enforceable contract that is binding on Frenette.
 
 See
 
 11 U.S.C. § 524(c) (if the conditions are met, the agreement "is enforceable only to any extent enforceable under applicable nonbankruptcy law”). We need not reach this question today.
 

 [12]
 

 . The Minnesota bankruptcy court entered an Order for Judgment and a Judgment "[p]ursuant to the stipulation of the parties” in the Rein adversary proceeding on November 7, 1997; the Rhode Island bankruptcy court entered a Consent Judgment in the Croces adversary proceeding on May 12, 1998; and the Rhode Island bankruptcy court entered a Consent Judgment in the Driscoll adversary proceeding on May 20, 1998.
 

 [13]
 

 . See
 
 also Continental Illinois Nat’l Bank & Trust Co. v. Windham,
 
 668 F.Supp. 578, 583-84 (E.D.Tex.1987) (claims by guarantor alleging wrongful lending and collection practices against administrator of FDIC barred by guarantor’s acknowledgment of debt owed to FDIC in prior bankruptcy proceeding);
 
 cf. Oneida Motor Freight, Inc. v. United Jersey Bank,
 
 848 F.2d 414, 420 (3d Cir.1988) (action for breach of loan agreements and fraudulent misrepresentations that allegedly forced debtor into bankruptcy arose out of parties' lending agreements and course of dealing for purpose of equitable and judicial estoppel analyses).
 

 [14]
 

 .
 
 See also First Pac. Barikcorp., Inc. v. Heifer,
 
 224 F.3d 1117, 1128-29 (9th Cir.2000) (noting that "[t]he last of these criteria is the most important” and holding that judgment in action by shareholders of bank seeking accounting reports of bank’s financial condition from FDIC during FDIC receivership barred subsequent claims against FDIC because both suits arose from the bank's dissatisfaction with FDIC's accounting reports of its receivership).
 

 [15]
 

 . Bankruptcy courts and state courts have concurrent jurisdiction over all nondis-chargeability actions except those brought under § 523(a)(2), (4), (6) and (15). For example, there is concurrent state and federal jurisdiction over § 523(a)(5) nondischarge-ability actions, which are actions seeking to hold alimony or child support debts nondis-chargeable.
 
 In re Siragusa,
 
 27 F.3d 406, 408 (9th Cir.1994);
 
 see also In re Franklin,
 
 179 B.R. at 920 (discussing exclusive jurisdiction exception to the general rule of concurrent jurisdiction).