**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ZAC ZANE FANCHER,<br><span style="padding-left:4em">Debtor.</span> | BAP No. EC-25-1038-FSC<br><br>Bk. No. 24-10440 |
| ZAC ZANE FANCHER,<br><span style="padding-left:4em">Appellant,</span><br>v.<br>TULARE COUNTY RESOURCE<br>MANAGEMENT AGENCY,<br><span style="padding-left:4em">Appellee.</span> | Adv. No. 24-01013<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Jennifer E. Niemann, Bankruptcy Judge, Presiding

Before: FARIS, SPRAKER, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Zac Zane Fancher and his parents refused to abate

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of

health and safety violations found on their property. After the Fanchers unsuccessfully contested the violations at the county and state levels, appellee Tulare County Resource Management Agency (the "County") conducted abatement enforcement actions and recorded a lien against the property for the costs. Mr. Fancher sought bankruptcy protection and filed an adversary complaint against the County, seeking to have the lien invalidated. The bankruptcy court dismissed the adversary proceeding, and Mr. Fancher appealed.

We discern no error and AFFIRM.

## FACTS[2]

### A.    Prepetition events

William D. Fancher, Cathy F. Fancher, and appellant Zac Zane Fancher owned real properly located in Springville, California (the "Property").[3] In March 2017, the County inspected the Property and sent the Fanchers a Thirty Day Notice to Abate concerning various violations observed on the Property. Two months later, the County issued a Notice of Violation, Order to Correct, Order to Show Cause and Notice of

---

Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] William and Cathy Fancher initially owned the Property. Their son, Zac Fancher, was involved in the abatement proceedings and later obtained an interest in the Property.

Assessment of Civil Fines and Penalties against the Property.

The Fanchers appealed the violations and appeared at an administrative hearing overseen by Inspector Kevin J. Tromborg.

On June 28, 2017, Inspector Tromborg issued a Notice of Decision of Administrative Hearing Officer (the "Administrative Decision"). He found multiple violations of the Tulare County Ordinance Code ("TCO"), including: unapproved remodel; infestation of insect, vermin, or rodents; general dilapidation; deteriorated foundations, floor supports, and waterproofing; accumulation of solid waste, junk, garbage, and stagnant water; and occupied travel trailer and recreational vehicles without a proper permit. Inspector Tromborg concluded that the violations constituted a public nuisance and upheld the fines and penalties.[4]

The Fanchers appealed the Administrative Decision to the Tulare County Board of Supervisors, but the Board of Supervisors upheld the Administrative Decision.

The Fanchers then filed a Petition for Administrative Writ of Mandamus in the state superior court. The superior court entered judgment in favor of the County in December 2018. The Fanchers appealed, but the California Court of Appeal upheld the superior court's ruling. *Fancher v. County of Tulare*, No. F078899, 2020 WL 6479556 (Cal. Ct. App. Nov. 4, 2020). The court of appeal held that: substantial evidence supported

---

[4] The County recorded the Administrative Decision with the Tulare County Recorder's Office on July 25, 2017.

3

the administrative findings and conclusions; the County did not lack jurisdiction to pursue the code enforcement and abatement action; the Fanchers received a fair administrative hearing; and Inspector Tromborg was competent to serve as the hearing officer.

In the meantime, and shortly after the superior court's ruling, the County served the Fanchers with a Notice of Intent to Abate by Demolition and Removal and Final Notice to Correct (the "Notice of Intent to Abate").[5] On February 22, 2019, the County obtained an Abatement Warrant to conduct an abatement of the Property and posted a Notice of Intent to Execute Warrant for Public Nuisance Abatement. The Abatement Warrant was signed by the superior court judge and dated one day prior.

A few days later, the County served the Abatement Warrant on Mr. Fancher and conducted an inspection, cleanup, and abatement of the Property. It took three days to demolish multiple structures, remove a half dozen vehicles, and dispose of thousands of pounds of solid waste. The process cost $86,772.95.

In September 2019, the County sent the Fanchers a demand for payment for the cost of the abatement. The Fanchers refused to pay and asserted that they did not receive notice of the abatement hearing, thus

---

[5] The Notice of Intent to Abate advised the Fanchers that failure to correct the violations would result in the County immediately seeking a civil abatement warrant to proceed with demolition and removal, and "[a]ll Administrative Costs and the Cost of Abatement/Demolition **will** be recorded as a lien against your property and **will** be specially assessed against the real property . . . ."

4

rendering the Administrative Decision void.

The County of Tulare Board of Supervisors informed the Fanchers that it would review the abatement costs at a meeting on March 17, 2020. The Board of Supervisors held a public hearing, but no one offered public testimony. Mr. Fancher admitted that he received notice of the hearing but did not attend. The Board of Supervisors confirmed the costs asserted by the County and ordered such costs to be placed on the county tax roll as a special assessment against the Property. It also ordered the County to record a Notice of Abatement Lien against the Property.

Mr. Fancher's father passed away. In 2021, his mother quitclaimed her interest in the Property to Mr. Fancher. Although Mr. Fancher contacted the Tulare County Assessor's Office in late 2021 about payment of the outstanding taxes on the Property, he never paid the taxes.

The County recorded the Notice of Abatement Lien on February 17, 2022, nearly two years after the Board of Supervisors' decision. The County served Mr. Fancher with a copy of the notice.

## B.    Mr. Fancher's bankruptcy case

Approximately two years later, Mr. Fancher filed a chapter 7 bankruptcy petition. He scheduled an unsecured claim in favor of the County in the amount of $148,378.22 for the "special assessment, abatement lien." Mr. Fancher asserted that the County's special assessment was "wholly void" and that he did not acknowledge it as a secured claim.

The chapter 7 trustee filed a no-asset report. Mr. Fancher received his

discharge in June 2024.

## C.    The adversary proceeding

In the meantime, Mr. Fancher, proceeding pro se, filed a complaint in bankruptcy court against the County, seeking to void the County's abatement lien. The court twice dismissed the complaint with leave to amend.

Mr. Fancher's second amended complaint asserted six claims for relief: (1) failure to comply with regulatory deadlines (to record the abatement lien); (2) declaratory relief (confirming that the County did not comply with TCO § 7-15-3800); (3) determination of tax liability; (4) disallowance (of the defective abatement lien); (5) lack of statutory jurisdiction (because Inspector Tromborg was not an administrative law judge); and (6) lack of personal jurisdiction (because the Notice of Intent to Abate did not inform the Fanchers of their right to appeal to the Board of Supervisors). Mr. Fancher also filed a request for judicial notice and numerous documents in support of the second amended complaint.

## D.    The motion to dismiss the second amended complaint

The County filed a motion to dismiss the second amended complaint (the "Motion to Dismiss"), arguing (in summary) that it had complied with all applicable legal requirements, that the claim preclusive effect of the state courts' decisions barred most of Mr. Fancher's arguments, and that all of Mr. Fancher's arguments were wrong.

Mr. Fancher filed a written opposition to the Motion to Dismiss but

did not appear at the hearing.

The bankruptcy court granted the Motion to Dismiss in a thorough and carefully written decision. It entered an order granting the Motion to Dismiss and dismissing with prejudice all claims for relief except for the third claim, which it dismissed without prejudice.[6]

Mr. Fancher timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in dismissing Mr. Fancher's second amended complaint.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant a Civil Rule 12(b)(6) motion to dismiss. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

---

[6] Mr. Fancher complains on appeal that the bankruptcy court did not take judicial notice of documents he filed, despite granting the County's request for judicial notice. But the bankruptcy court clearly reviewed the documents that Mr. Fancher submitted and explicitly stated in its order that it considered the "Supporting Exhibits" that were filed with the second amended complaint. It also stated in its civil minutes that it took judicial notice of all documents filed in the bankruptcy case "in its entirety."

**DISCUSSION**

Mr. Fancher's arguments on appeal are largely an impermissible collateral attack on the Administrative Decision, the Board of Supervisors' affirmance of that decision, the superior court's mandamus decision, and the court of appeal's affirmance. *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) ("The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts."); *Richards v. Richards (In re Richards)*, 655 B.R. 782, 798 (9th Cir. BAP 2023) (affirming dismissal order where the causes of action "necessarily required the bankruptcy court to disregard state court orders and judgments . . . [because] [s]uch a determination is patently barred by the *Rooker-Feldman* doctrine"). Some of his arguments are also barred by claim preclusion, since the claims raised in the second amended complaint were or could have been raised as defenses in the state courts. The remainder of Mr. Fancher's arguments have no merit.

**A.      Civil Rule 12(b)(6) requires Mr. Fancher to state a claim upon which relief can be granted.**

"[W]e apply the same legal standards governing motions to dismiss under Civil Rule 12(b)(6) that apply in all federal courts." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 573 (9th Cir. BAP 2011). Under Civil Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual

8

allegations to support those theories. *See id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face.").

A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 570. In other words, a complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (cleaned up).

In deciding whether the complaint states a claim upon which relief can be granted, the court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**B. Mr. Fancher is precluded from relitigating his defenses that were already decided or that could have been decided in state court.**

Mr. Fancher's overarching argument is that the underlying

Administrative Decision was void, so all of the subsequent proceedings – including the abatement lien – are similarly void. But the state court already adjudicated the County's claims and Mr. Fancher's defenses in a final decision, and we will not second-guess the state court.

Claim preclusion prevents parties from asserting any claims or defenses that were raised or could have been raised in a prior action. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 321-22 (9th Cir. 1988) ("Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." (cleaned up)).

Federal courts must "refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also Robi*, 838 F.2d at 322 (applying California law to a California judgment and stating that federal courts must "apply the *res judicata* rules of a particular state to judgments issued by courts of that state" (citation omitted)). Thus, we must apply California preclusion law to the state court judgment.

Under California law, "[c]laim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. If claim preclusion is

10

established, it operates to bar relitigation of the claim altogether." *Gray v. La Salle Bank, N.A.*, 95 Cal. App. 5th 932, 949 (2023) (cleaned up), *as modified on denial of reh'g* (Sept. 27, 2023). California recognizes that claim preclusion is also applicable to defenses that a party did assert or could have asserted:

> If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. . . . If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result. . . . This principle also operates to demand of a defendant that all of its defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them.

*City of Glendale v. Roseglen Constr., Inc.*, 10 Cal. App. 3d 777, 781 (Ct. App. 1970) (cleaned up); *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) ("[P]reclusion of defenses must, at a minimum, satisfy the strictures of issue preclusion or claim preclusion.").

It is clear that Mr. Fancher is attempting to relitigate claims that the County asserted in the state courts – and defenses to those claims that he asserted (or could have asserted) – and that the state courts finally decided. The superior court did not find any merit to the writ of mandamus, and the court of appeal "reject[ed] the Fanchers' conclusory and unsupported assertion that the county either lacked subject matter jurisdiction or acted in excess of its jurisdiction." *Fancher*, 2020 WL 6479556, at *8. It similarly

did not find any merit to the Fanchers' defenses that "the proceedings were unfair, unlawful, or that a fair hearing or trial was not provided." *Id.* The court of appeal specifically rejected the argument that Inspector Tromborg was not qualified to oversee the administrative hearing; the court first stated that it would not consider the issue because it had not been raised in the opening brief, but even if it did, it held that "the Fanchers have failed to show that a person of Tromborg's experience and qualifications could not fairly and competently resolve the underlying factual matters and code violations involved here." *Id.* at *9.[7]

The court of appeal also rejected all of Mr. Fancher's challenges to Inspector Tromborg's factual findings:

> the evidence adequately supported—either directly or by
> reasonable inference—the findings made by the hearing officer

---

[7] Even if we were to consider anew Mr. Fancher's challenge to Inspector Tromborg's qualifications, we would affirm. As the bankruptcy court correctly stated, California Government Code § 27720 provides that "[t]he board of supervisors of any county **may** establish the office of county hearing officer." (Emphasis added.) The use of the word "may" means that a county is permitted but not required to establish such an office. If a hearing officer is "appointed pursuant to this chapter," he or she "shall be an attorney at law . . . ." Cal. Gov't Code § 27724. Tulare County did not create the office of the county hearing officer until it adopted TCO § 1-31-110, which became effective in June 2019. Thus, the requirement that a hearing officer possess a law license only arose in Tulare County two years after Inspector Tromborg issued the Administrative Decision on June 28, 2017.

Mr. Fancher also argues on appeal that claim preclusion is inapplicable because the Administrative Decision has no preclusive effect. He ignores the fact that the state court entered judgment approving of the Administrative Decision. The state court judgments have preclusive effect, so we need not consider whether the Administrative Decision has independent preclusive effect.

and confirmed by the trial court that the condition of the Fanchers' real property not only violated code standards but constituted an appreciable risk to public health or safety. On this record, it was not error to declare the condition of the property to be a public nuisance, and the Fanchers have failed to meet their burden to show otherwise.

*Id.* at *8. We will not reexamine or overturn the state court rulings.

Mr. Fancher argues on appeal that claim preclusion is not applicable because the Administrative Decision was void, so any subsequent decision affirming that decision was similarly invalid. This is nonsensical. The Fanchers already challenged the validity of the Administrative Decision before the state superior court and court of appeal, both of which ruled that the Administrative Decision was correct and valid. Mr. Fancher had an opportunity to convince the state courts that the Administrative Decision was void. He failed. The doctrine of claim preclusion prevents Mr. Fancher from endlessly repeating that argument.

Therefore, the bankruptcy court correctly rejected all of Mr. Fancher's attempts to overturn the Administrative Decision.

## C. **Mr. Fancher's challenges to the County's abatement actions are meritless.**

Mr. Fancher's remaining arguments concern abatement events occurring after the court decisions. None of his contentions warrant reversal.

### 1. Mr. Fancher failed to state a claim that the abatement lien is invalid.

Mr. Fancher contends that the bankruptcy court erred when it rejected his many arguments concerning the recording (or nonrecording) of the Notice of Abatement Lien and the special assessment. The court did not err.

Mr. Fancher relies on Title 25, Article 6, Section 70 of the California Code of Regulations, which provides that, in the event of nonpayment of the net expense of abating a nuisance, "the governing board shall, at any time within 60 days after the decision of the governing board on the statement, cause to be filed in the office of the county recorder of the county in which the property is located a certificate substantially" in a prescribed form. Cal. Code Regs. Title 25, § 70(b). But the statute permits counties to opt out of this procedure and instead create their own abatement procedures. Cal. Code Regs. Title 25, § 52. As the bankruptcy court pointed out, Tulare County enacted TCO § 7-15-3500, which provides that Article 35 of the Tulare County Ordinance is "equivalent to the procedures provided in Article 6 . . . of Title 25 . . . of the California Code of Regulations." Thus, the controlling provision is TCO § 7-15-3770, and that section contains no such deadline.[8]

---

[8] TCO § 7-15-3770(c) makes no mention of a deadline:

If the Board orders the costs and fees to be specially assessed against the real property, the Board may also order that a notice of abatement lien be recorded against the affected real property until such costs and fees have

Mr. Fancher argues that the County failed to record the special assessment as ordered by the Board of Supervisors and that the assessment is therefore invalid. But the Board of Supervisors did not require recordation of the special assessment. Rather, it directed the county tax collector to "place such costs on the County tax roll as a special assessment against the [Property]." The tax collector did just that. The Board of Supervisors "[o]rder[ed] that the costs as confirmed be recorded in the office of the Tulare County Recorder[.]" But that is exactly what the County did when it recorded the Notice of Abatement Lien.

Mr. Fancher claims that the Notice of Abatement Lien contained an incorrect description of the Property, rendering it void. The description of the Property in the Notice of Abatement Lien is identical in substance to the description he thinks is correct, except his description refers to Parcel Map No. 1070, while the Notice of Abatement Lien refers to Parcel Map No. 10705. But he offers no authority for the proposition that this single-digit discrepancy rendered the lien void.

Most importantly, any discrepancy in the Notice of Abatement Lien, or the recording (or nonrecording) of these documents, had no effect on

been paid in full. The notice shall, at a minimum, identify the record owner or possessor of property, set forth the last known address of the record owner or possessor, set forth the date upon which abatement of the nuisance was ordered, and the date the abatement was complete, and include a description of the real property subject to the lien and the amount of the abatement cost and fees.

15

Mr. Fancher. A county tax assessment creates a statutory lien that is not dependent upon recording. "Every tax, penalty, or interest, including redemption penalty or interest, on real property is a lien against the property assessed." Cal. Rev. & Tax. Code § 2187. "When the county assesses a tax against a property, the imposition of the tax is a lien against the property assessed. The lien attaches by operation of law . . . [and] constitutes an encumbrance on the title to the land and does so without any prior recording in the county recorder's office." *Meyer v. Sheh*, 74 Cal. App. 5th 830, 839 (2022) (cleaned up). In other words, the special assessment automatically became a lien pursuant to statute when it was added to the tax roll. The County's failure to record the special assessment and any error in the legal description of the Property in the Notice of Abatement Lien did not adversely affect Mr. Fancher.

Mr. Fancher contends that the County needed to record the special assessment to put the world on notice that the special assessment attached to the Property. Mr. Fancher does not explain why he is entitled to make this argument; there is no question that he had ample notice of the special assessment; and he is not "the world." Further, the statute he relies on does not require the recording of a special assessment (which, as discussed above, becomes a lien by operation of California Revenue and Taxation Code § 2187) but merely addresses the effect of recordation. *See* Cal. Gov't Code § 53932 ("From and after the time for filing or recording the assessment, as provided in the law pursuant to which it is levied, it shall

16

impart notice to all persons."). His reliance on *Tharp Family Ltd. Partnership v. County of Tulare*, No. F066231, 2014 WL 2612540 (Cal. Ct. App. June 12, 2014), is also unavailing; while a notice of decision was recorded in that case, the ruling does not mandate that a special assessment must be recorded in order to be valid, and it does not otherwise suggest that the County failed to follow the correct procedure in this case.

Mr. Fancher claims that TCO § 7-15-3800 required the County to immediately record notice of the Board of Supervisors' decision. That ordinance provides: "The enforcement officer shall record notice of final disposition of any action or proceeding instituted pursuant to this Article immediately following final resolution of the action or proceeding." The Notice of Abatement Lien fulfilled this requirement: it was a notice that the Board of Supervisors had finally decided the abatement costs and liability.[9] In other words, the Board of Supervisors' ruling as memorialized in the Notice of Abatement Lien was the final resolution of the action or proceeding, and the County was not required to record separately the Board of Supervisors' decision.[10]

---

[9] We also reject Mr. Fancher's argument that the County's failure to record the Notice of Abatement Lien "immediately" voids the lien. Mr. Fancher does not explain how he was injured by such a delay or why he is entitled to the benefit of that deadline.

[10] We similarly reject Mr. Fancher's reliance on California Government Code §§ 39577 and 38773.5, because they are inapplicable to this appeal.

17

### 2. Mr. Fancher failed to state a claim that he is entitled to an offset.

Mr. Fancher argues that the County received state or federal funds to pay for the costs of abating the violations, so the judgment would result in an impermissible double recovery. We reject this argument for multiple reasons.

First, as the bankruptcy court correctly held, the relevant state statutes hold property owners fully liable for abatement costs. California Government Code § 25845, which controls "liability for costs and fees," provides that "the owner of a parcel upon which the nuisance is found to exist **shall be liable for all costs** of abatement incurred by the county, including, but not limited to, administrative costs, and any and all costs incurred in the physical abatement of the nuisance." Cal. Gov't Code § 25845(b) (emphasis added). Mr. Fancher does not point to any state statute or county ordinance that mandates an offset.

Second, Mr. Fancher does not present any plausible allegation that state or federal funds were used to abate the Property. Even construing the second amended complaint's allegations in the light most favorable to Mr. Fancher, he does not tie any particular funding source or amount of money to the abatement of his Property or otherwise plausibly allege that the County received such funds for that specific purpose. His allegation that the County used certain state and federal funds in his case is mere speculation that is not sufficient to survive a motion to dismiss.

18

Third, if Mr. Fancher's argument were correct, state and federal grants to counties to abate hazardous conditions would (in effect) subsidize property owners who create or permit such conditions, and owners like Mr. Fancher would get a free pass to ignore health and safety ordinances. This would be an absurd policy.

**3. Mr. Fancher failed to state a claim that he was not provided proper notice of an abatement hearing.**

Mr. Fancher contends that the County denied him and his parents due process because the County did not give adequate notice before it executed the abatement on February 26, 2019. He is wrong.

Section 28545(a) of the California Government Code provides, in relevant part:

> The board of supervisors, by ordinance, may establish a procedure for the abatement of a nuisance. The ordinance shall, at a minimum, provide that the owner of the parcel, and anyone known to the board of supervisors to be in possession of the parcel, be given notice of the abatement proceeding and an opportunity to appear before the board of supervisors and be heard prior to the abatement of the nuisance by the county.

Mr. Fancher appears to believe that the 2017 administrative proceedings (before Inspector Tromborg and the Board of Supervisors) were distinct from the issuance of the 2019 Abatement Warrant, such that he was entitled to a second hearing before the Board of Supervisors prior to any abatement action. Mr. Fancher misunderstands the notice requirement. The abatement authorized by the Abatement Warrant was merely the

19

enforcement mechanism resulting from the Board of Supervisors' affirmance of the Administrative Decision. Although Mr. Fancher is correct that there was a two-year gap between the 2017 decisions and the 2019 enforcement, the reason is simple and of his own making: the County did not act while Mr. Fancher's mandamus proceedings were pending; it only moved forward with the Notice of Intent to Abate and the Abatement Warrant after the superior court ruled against Mr. Fancher.[11] Mr. Fancher does not provide any authority that he was entitled to another notice or hearing after he challenged the initial decision in state court and lost.

Mr. Fancher admits that the Fanchers did avail themselves of the opportunities to appeal. While it is true that the Notice of Intent to Abate did not include any notice of a right to appeal, none was necessary; the Fanchers had already exhausted their right to be heard by the Board of Supervisors.

### 4. Mr. Fancher failed to state a claim that the Abatement Warrant was deficient.

Finally, Mr. Fancher claims that the superior court denied him due process when it issued the Abatement Warrant. He claims that the superior court judge signed the Abatement Warrant a day before holding a hearing and implies elsewhere that the signatures may have been forgeries.

---

[11] The County was not required to extend this benefit to the Fanchers. They did not obtain a stay pending appeal, so the County did not need to wait until the resolution of the appeal to proceed with abatement.

Mr. Fancher's argument that this was error is wrong; his implication of a "conspiracy" is frivolous.

First, there is no indication (aside from Mr. Fancher's bald accusations) that any of the signatures on official documents are forgeries.

Second, as the bankruptcy court correctly explained, the discrepancy between the dates of the signing and entry of the Abatement Warrant does not indicate any wrongdoing or procedural error. The judge signed the warrant on one day and the clerk entered it the following day.

Third, there is no evidence in the record to support Mr. Fancher's assumption that the superior court judge conducted an "abatement hearing" on February 22, 2019 that occurred after the judge signed the warrant. As the bankruptcy court stated, the applicable state statutes and county ordinances do not require a hearing prior to the issuance of an abatement warrant. *See* Cal. Code Civ. P. 1822.50-1822.60; TCO § 4-01-1310. California Government Code § 25845(a) only mandates "an opportunity to appear before the board of supervisors," which the Fanchers did in 2017. Accordingly, his claim that the Abatement Warrant was defective is not plausible.

## CONCLUSION

The bankruptcy court did not err in dismissing the second amended complaint. We AFFIRM.

21