### In re CALIFORNIA LITFUNDING, A Nevada Corporation, Reorganized Debtor.

### Lauren Associates, Valerie Westheimer, DFOTM Trust, and Kempten International, Plaintiffs,

v.

### Morton C. Reed, an individual, Stanley Weiner, an individual, and David Cohen, an individual, Defendants.

**Bankruptcy No. LA 04–11622RN.**
**Adversary No. 06–01865RN.**

United States Bankruptcy Court, C.D. California.

Jan. 29, 2007.

Sean A. O'Keefe, Winthrop Couchot, Professional Corporation, Newport Beach, CA, for Defendants.

John Graham, Thomas M. Geher, Jeffer Mangels Butler & Marmaro LLP, Los Angeles, CA, for Plaintiffs.

## *AMENDED* MEMORANDUM OF DECISION DISMISSING ADVERSARY PROCEEDING AND DENYING MOTION FOR CONTEMPT SANCTIONS

RICHARD M. NEITER, Bankruptcy Judge.

This Memorandum of Decision relates to the Motion to Dismiss Complaint for Fraud and For Contempt Sanctions ("*Motion*") filed by the Defendants in this adversary proceeding and the responsive pleadings filed thereto. This Court has core jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

This Decision is based upon the Court's evaluation of the parties' respective points and authorities, requests for judicial notice, and declarations filed in support of or in opposition to the Motion. For the reasons set forth below, this Court grants the motion to dismiss the complaint and denies the request for sanctions.

## I. FACTS

The Movants are Morton Reed, Stanley Weiner, and David Cohen (directors of the Debtors and *"Defendants"* in the above-referenced action), and the Debtors (collectively, the *"Movants"*). Debtors are not a party to the adversary proceeding but joined in the Motion. The Motion seeks two types of relief: (1) dismissal of the adversary proceeding, and (2) contempt sanctions re contempt in the form of attorneys' fees and costs.

In March 2006, the Plaintiffs commenced a state court action against the Defendants for fraud in connection with the disclosure statement issued as a pre-

cursor to confirming the Debtor's plan of reorganization. This prompted the filing of a motion (1) to enforce the discharge injunction of the Debtor's confirmed plan of reorganization under §§ 1141 and 1144,[1] and (2) for contempt sanctions. Several issues were raised at the hearing, including, *inter alia,* the state court's jurisdiction to hear matters that pertain to the Debtor's confirmed Plan. At the hearing, the Court ruled that the bankruptcy court has exclusive jurisdiction over the Plaintiffs' claims and the state court action was stayed under 11 U.S.C. § 105(a). This Court, however, withheld any ruling regarding contempt. Findings of fact, conclusions of law and an order were entered on August 8, 2006.

In view of the court's order of August 8, 2006, the Plaintiffs dismissed their action in the state court and commenced this adversary proceeding asserting the same claim for relief in the Debtors' consolidated bankruptcy case on August 11, 2006. In general, Plaintiffs are alleging fraud in the inducement against the Defendants for

---

**1.** Section 12.2 of the order confirming the plan provides: "Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or this order, on and after the Effective Date, all Persons and Entities who have held, currently hold, or may hold a debt, Claim or Interest discharged pursuant to the terms of the Plan (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units) shall be permanently enjoined from: (a) taking any of the following actions on account of any such discharged debt, Claim or Interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, their successor or their property; (2) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors, their successors or their property; (3) creating, perfecting, or enforcing any Lien

or encumbrance against the Debtors, the Reorganized Debtors, their successors or their property (4) asserting any set off, right of subrogation or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, their successors, or their property; and (5)c commencing or continuing in any action, in any manner, in any place that does not comply with or is inconsistent with the provision of this Plan; and (b) taking any of the following actions on account of any claim or rights of action that are revested in, or transferred to, the Reorganized Debtors as of the Effective Date or under the Plan (to the extent one or more Debtors' Estates held such claim or rights of action or held the right to assert such claim or right of action after the Petition Date): (1) asserting such claims or rights of action against non-debtor third parties; and (2) commencing or continuing in any manner any action or other proceeding of any kind to recover or otherwise with respect to such claims or rights of action."

misrepresentations and/or omissions in the Debtor's disclosure statement that occurred preconfirmation which, according to Plaintiffs, caused them to agree to a settlement and accept the Debtors' plan of reorganization, which, inter alia, included general releases of the Debtors and the Defendants. *See Complaint attached as Ex. 3 to the Motion.*

As an overview, Plaintiffs are prepetition investors of the Debtors and members of the group of unsecured creditors referred to as "IEP Claimants" under the confirmed Plan. The bankruptcy case dealt mainly with the litigation between the Plaintiffs, the other IEP Claimants, the Debtors, and their officers and directors. On February 26, 2004, the parties entered into a global settlement that, inter alia, released all claims held by the parties against each other, and their respective officers, directors and agents, both known and unknown. The settlement agreement was drafted by Thomas Geher of Jeffer Mangels, attorney for Plaintiff DFOTM Trust, and was described in detail in the Second Amended Joint Disclosure Statement (the *"Disclosure Statement"*) and incorporated into the confirmed Second Amended Joint Chapter 11 Plan of Reorganization (the *"Plan"*).

In general, the Plan provided for the IEP Claimants to receive all funds collected from the attorneys whose litigation the Debtors funded (*"Contract Pool"*) minus an administrative charge. The funds collected were to be used to pay the IEP Plan Note of $26,111,763 plus 20% interest beginning May 1, 2004. If the Note was paid in full prior to May 1, 2005, the interest rate on the Note during the first year was to be reduced to be 10% per annum. The IEP Plan Note was a nonrecourse note and was to be paid only from the Contract Pool. If the Note was not paid in full by May 1, 2005, the IEP Claim-

ants were entitled to collect from the Debtors the balance on the Note or the administrative charge paid to the Debtors, whichever was less. The IEP Distribution Agent appointed by the IEP Claimants was given a lien in the Contract Pool and its proceeds. The lien did not attach to any contracts entered into by the Debtors after February 26, 2004. The Disclosure Statement described the procedures for distributing funds in the Contract Pool and the rights and obligations of the parties pursuant to the Settlement Agreement. It also stated that the treatment of the rights of IEP Claimants provided for in the Plan was a compromise of controversies and upon Plan confirmation, each IEP Claimant would be bound by the provisions and distribution procedures provided for in the Plan, the settlement agreement, the IEP Plan Note, etc., and that each IEP Claimant's claim was to be fixed in the amount set forth under the Plan.

The Disclosure Statement also explicitly provided for the general releases described in the parties' Settlement Agreement. *See Ex. F in Movants' First RSN,* at 185, 230. Similarly, the Plan provided for the release required by the parties' Settlement Agreement. *See Ex. A in Movants' First RSN,* at 41–43 (*Plan* at 28–30, ¶ L). In particular, the IEP Claimants released the Debtors, their officers, directors, agents, attorneys, employees affiliate, etc. from any and all claims, whether known or unknown, fixed or contingent, liquidated or unliquidated, except the obligations set forth in the Plan and the IEP Settlement Agreement. *Id.* The release was meant to bar all matters released therein notwithstanding the discovery or existence of any additional information or different facts or claims. *Id.* The parties also waived their rights under § 1542 of the Cal. Civil Code which provides in relevant part:

"A general release does not extend to claims which the creditor does not know or suspect exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

The Plaintiffs voted in favor of the Plan, *see Ex. J to First RSN,* and the Plan was confirmed by an order of this Court entered on June 17, 2004. *Ex. A to Movants' First RSN.*

The Plaintiffs' complaint alleges that in order to reorganize the Debtors, the Defendants fraudulently induced the Plaintiffs to enter into the Settlement Agreement and to accept the Plan by omitting to disclose material facts and making misrepresentations about others, postpetition but before plan confirmation, upon which the Plaintiffs relied. *See Ex. 3 to the Motion.* In particular, the Plaintiffs alleged fraud in the inducement when the Defendants represented in the Disclosure Statement that the IEP Claimants could expect to collect approximately $35 million from the contracts entered into by the Debtors in the cases then pending, but in fact, collection on one set of cases (Prop 65 cases) had been ruled out due to summary adjudication. *Id.* at 7–9. Also, Defendants failed to disclose an agreement between an attorney, Mark Ravis ("*Ravis*"), and the Weiner Trust that effectively gave the Weiner Trust a priority security interest in the receivables due from Ravis but the debt owing by Ravis to the Debtors had been paid off with funds received from the Weiner Trust. *Id.* As such, any recovery would go to the Weiner Trust instead of the IEP Claimants. *Id.* The Plaintiffs also alleged that the Defendants failed to include a 20% loss calculation in their projec-

tions. (The Court hereafter refers to these acts as "new fraud" or "Postpetition Fraud Claims.") Plaintiffs contended that they did not discover these Postpetition Fraud Claims until after confirmation of the Plan and as such, said claims were not barred by the general releases given. The complaint also reiterates the alleged fraud committed prepetition that would have been released pursuant to the Settlement Agreement and Plan. Finally, Plaintiffs alleged that the Defendants breached certain provisions of the Plan.[2] However, the complaint avers only one cause of action for fraud. The fraud cause of action pertains to solely postpetition fraudulent conduct. Plaintiffs are seeking at least $4 million in damages plus interest and an unknown amount for exemplary damages.

In support of the dismissal, Movants assert that the Postpetition Fraud Claims are (1) a collateral attack on the plan confirmation order; (2) time barred under the Federal Rules of Bankruptcy Procedure ("*FRBP*"); and (3) barred by res judicata. Movants also seek a finding of contempt in the form of sanctions for Plaintiffs having brought this adversary proceeding and the state court action notwithstanding the general releases given and the injunctive provision of the order confirming the Plan.

In response, the opposition argues that (1) the doctrine of res judicata does not apply and (2) § 1144 does not apply to the Postpetition Fraud Claims. The Plaintiffs also assert that the fraud in this case vitiates the release. Lastly, the request for contempt sanctions is procedurally defective.

In reply, the Movants reiterate that res judicata applies to this adversary proceed-

---

**2.** Plaintiff contended the Debtors and the Defendants "(a) gave unauthorized excessive discounts greater than 10% authorized by the Agreement and the Plan to certain lawyers; (b) did not deposit into the Concentration Account payments received from some of the funded lawyers; and (c) approved write-off agreements with lawyers in violation of the Agreement and the Plan." *Complaint,* ¶ 21.

ing and that the Postpetition Fraud Claims were time barred. The cases cited by the Plaintiffs for the proposition that § 1144 does not apply are inapposite. Likewise, the allegations of fraud lack merit based upon certain events that have occurred and pleadings that have been filed in this case.

## II. DISCUSSION

In order to sustain a motion to dismiss, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-plead factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mutual Insurance, Co.*, 80 F.3d 336 (9th Cir.1996). In construing the complaint in the light most favorable to plaintiffs, the court should not dismiss a complaint unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896 (9th Cir.1986). Accepting all well-pleaded factual allegations as true requires the court to accept as true all material allegations in the complaint as well as all reasonable inferences drawn from them.[3] *Id.* A dismissal will be affirmed "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Cook, Perkiss, & Liehe v. Northern Calif. Collection Serv.*, 911 F.2d 242, 244 (9th Cir.1990).

**A. The instant adversary proceeding is a collateral attack against this Court's Plan confirmation order and is therefore time barred under the 11 U.S.C. § 1144.**

■ "Collateral attack" is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court. *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). A collateral attack against a confirmed plan is impermissible. *See Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir.1995) (only a direct attack against a plan is available and collateral attack is unavailable).

The Defendants challenge the legitimacy of the instant action arguing that the adversary proceeding is a collateral attack on the Debtors' plan of reorganization confirmed pursuant to an order entered two years ago. *Motion*, at 11:3–11. Plaintiffs, on the other hand, suggest that the 11 U.S.C. § 1144 does not apply in this proceeding since courts, including the Bankruptcy Appellate Panel for the 9th Circuit, have allowed postconfirmation fraud claims similar to the Plaintiffs'. *Opp'n.*, at 17–19.

Section 1144 (Revocation of an order of confirmation) provides:

"On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor."

Movants argue that the limitations imposed by § 1144 bar the Plaintiffs from

---

**3.** If a Rule 12(b)(6) motion presents matters outside of the pleadings which are not excluded by the court, the motion may be treated as one for summary judgment and disposed of as provided under Rule 56 provided all parties are given reasonable opportunity to present all material made pertinent to such Rule 56 motion.

pursuing the claim that the Plan and the release of the Defendants were procured through fraud of the Defendants. The order confirming the Plan was entered on June 17, 2004 which became final on June 27, 2004 without having been appealed. Pursuant to § 1144, challenges based on fraud against the order confirming the Plan had to have been made no later than January 17, 2005.

The law in applying § 1144 is well-established. The Ninth Circuit has held that § 1144 is the only avenue for revoking confirmation of a plan of reorganization. *In re Orange Tree Associates, Ltd.*, 961 F.2d 1445, 1447 (9th Cir.1992). The expiration of the limitation period bars a motion to set aside confirmation of a plan of reorganization even if the fraud is not discovered until the period has passed. *Id.*; *accord In re Mission Heights Investors Ltd. Ptnr.*, 202 B.R. 131 (Bankr. D.Ariz.1996) (usually-accepted discovery of the fraud exceptions to a statute of limitations period are not available to plan confirmation challenges). In dismissing a complaint to overturn the order confirming a chapter 11 plan, the Ninth Circuit explained that there is a compelling reason for the finality of reorganization plans and courts have held uniformly that strict compliance with § 1144 is a prerequisite to relief. *Id.* citing to *In the Matter of Newport Harbor Associates*, 589 F.2d 20 (1st Cir.1978). The court has no power to extend the time within which the motion to revoke a confirmation plan may be made. *Id.* at 1448. In part, this is because under § 1141(a),

> "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, . . . whether or not the claim or interest of such creditor, . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan."

Plaintiffs argue, however, that § 1144 does not apply in this case because the Plaintiffs are not requesting that the Plan be revoked as their claims are for damages against the Defendants and not the Debtors. They rely on four cases *Newport Harbor Associates*, 589 F.2d 20 (1st Cir. 1978); *In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y.1990); *In F & M Marequet Nat'l. Bank v. Emmer Brothers Co. (In re Emmer Brothers Co.)*, 52 B.R. 385 (D.Minn.1985); and *In re Circle K Corp.*, 181 B.R. 457 (Bankr.Ariz.1995) to support their position. This Court finds that Plaintiffs misconstrued the holdings in these cases and as such, erroneously relied on them to support their position.

The oft-cited case on the application of § 1144 is *Newport Harbor Associates*, 589 F.2d 20 (1st Cir.1978) where the First Circuit denied a debtor's motion to revoke confirmation alleging fraudulent misrepresentations by the debtor's management regarding the extent of the debtor's operating losses. In finding that the claim was barred under § 1144, the First Circuit also stated that:

> "[its] opinion should not be read to suggest that the debtors or other creditors who may have been injured by fraud are necessary without other remedies in other forums. . . . It would appear . . . res judicata and collateral estoppel would not bar such an action, at least where the alleged fraud could not have been asserted in the bankruptcy proceeding, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement." *Newport Harbor*, 589 F.2d at 24.

Subsequent cases that have analyzed this exception, have recognized that creditors may not attack confirmation orders by simply characterizing their attempt as an

independent cause of action, rather than a motion to revoke the order. *In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y. 1990); *see also In F & M Marequet Nat'l. Bank v. Emmer Brothers Co. (In re Emmer Brothers Co.)*, 52 B.R. 385 (D.Minn. 1985) (the courts have held that creditors may not attack confirmation orders by simply characterizing the attempt as an independent cause of action rather than a motion to revoke the order); *cf. In re Genesis Health Ventures, Inc.*, 340 B.R. 729 (D.Del.2006). Thus, the 180 day deadline in § 1144 acts as a bar only to truly independent causes of action based on the debtor's wrongful conduct. *In re Coffee Cupboard, Inc.*, 119 B.R. at 19. The overriding principle was that:

> "where a claim does not involve an attempt to 'redivide the pie' by a disgruntled participant. . . but rather involves a dispute about additional assets that did not figure in the reorganization plan, an adjudication of the dispute would not upset the confirmed plan and the 180–day time limitation of § 1144 is not a bar." *In re Emmer Brothers Co.*, 52 B.R. at 392.

These cases establish that a court must look carefully at the facts, the cause of action, and the requested relief to determine if the plaintiff is seeking to revoke confirmation or "redivide the pie".

■■■ To determine whether an action is truly an independent cause of action under the *Newport Harbor* test, the Court must find: (i) the alleged fraud could not have been asserted in the bankruptcy proceeding; (ii) the underlying factual claims were not actually adjudicated; (iii) the relief sought would not upset the confirmed plan of arrangement and negatively affect innocent parties and creditors; and (iv) the action was not seeking to revoke confirmation or "redivide the pie." Taking the facts alleged in the complaint as true, this court finds that the cause of action for fraud is not a truly independent cause of action. Instead, it is a collateral attack on the Plan that is barred by § 1144 as the factual issues presented were similar to the factual issues raised in the plan confirmation process.

### (i) the alleged fraud could have been asserted in the bankruptcy proceeding

As for the first factor, Plaintiffs argue that the alleged fraud, which constitutes "new fraud", could not have been raised preconfirmation as it was not discovered until after confirmation. *Opp'n.*, at 19:16–23. However, the facts that allegedly gave rise to the fraud were the same statements that were either provided in or omitted from the Debtors' Disclosure Statement. The projections that the Plaintiffs allege contained misrepresentations were originally filed in January 2004 and amended twice, with the second amended Disclosure Statement being filed in April 2004 and later approved by the Court. In the exhibits that were attached to the Disclosure Statement and the settlement letter between the parties, the list of all pending cases constituting the "Contract Pool" from which cash flow distributions are to be made, the history/analysis of collections from the Contract Pool, and the projections of gross collection from the Contract Pool include the cases from Ravis who, according to Plaintiffs, entered into a "secret loan" with the Weiner Trust. *See Movants' First RSN*, Ex. F and *Plaintiffs' RSN*, Ex. 3. Plaintiffs assert that they relied on this information in settling with the Movants and approving the Plan. *Complaint*, ¶ 26 (*attached as Ex. 3 to Motion* ). The alleged fraudulent representations were available for investigation months before the hearing on confirmation and indeed, months after plan confirmation. Creditors were expected to review and investigate the Debtors' projections set

forth in the Disclosure Statement. Indeed, most disclosure statements admonish creditors to seek legal counsel to explain certain provisions of the Disclosure Statement in order for them to make informed decisions about a plan. Plaintiffs were not wanting of legal advice during the Disclosure Statement and Plan hearings in this case. The information giving rise to the purported fraud was available to the Plaintiffs and they could have (and should have) conducted their due diligence and investigated the accuracy (or inaccuracy) of the statements made in or omitted from the Disclosure Statement. The fraud could have been asserted in the bankruptcy case preconfirmation in opposition to the Disclosure Statement and the Plaintiffs also had six months postconfirmation to raise their fraud claim.

***(ii) the underlying factual claims were actually (or could have been) adjudicated***

As for the second factor, the facts demonstrating prepetition claims of fraud stated in the complaint were clearly asserted and adjudicated in Debtors' chapter 11 case through the Settlement Agreement and Plan. Likewise, the facts that purport to give rise to the alleged fraud postpetition but preconfirmation, i.e., the "new fraud" claims could have been addressed in the course of approving the Disclosure Statement and the Plan. As early as the Disclosure Statement hearings, Plaintiffs were aware that the Debtors' projections relating to the collection from pending lawsuits were, by definition, speculative. There were no assurances that all collection efforts would be successful such that the amounts collected would reach the projected levels stated in the Disclosure Statement. *See Ex. F of First RSN,* at 162–63.

In the complaint, the Plaintiffs allege that the Defendants represented in the Disclosure Statement that the IEP Claimants could collect approximately $35 million from the various pending cases. Plaintiffs further allege that these projections were false given the impossibility of realizing proceeds from one set of Prop 65 cases and the projected recovery from Ravis that allegedly was payable to the Weiner Trust. *Ex. 3 to the Motion* at 35–37. However, the Plaintiffs originally challenged the Debtors' projections based on their own expert's opinion that the Debtors could only collect $9 million from the open investments based upon their current loss rate instead of the projected $35 million. *Reply,* at 16–17; *See Ex. E in Movants' Second RSN.* Plaintiff's financial expert's declaration actually stated that his findings were based upon the records which he obtained from the Debtors. *Id.* at 16; *Ex. E in Movants' Second RSN.* The declaration was executed on February 2, 2004 and the parties' settlement, incorporating the releases, was effective February 26, 2004. Although the transaction between Ravis and the Weiner Trust surfaced postconfirmation, as Movants argue, the Plaintiffs were convinced, based on their own expert's opinion, that the Defendants were "lining their pockets with corporate funds derived from their investments and engaging in 'bad acts and financial mismanagement'" and never believed the Debtors' projections and representations in the Disclosure Statement. *Id.* at 17 citing *Opposition of Petitioning Creditors to Motion for Joint Administration of Cases* filed by Thomas Geher, counsel for DFOTM (and other IEP Claimants) attached as *Ex I to Movants' Second RSN.* While it may be true that Plaintiffs' may not have voted to accept the Plan or executed the Settlement Agreement if they were aware of the acts of fraud discovered postconfirmation, the events leading up to Plan confirmation suggest that the parties disputed the

amount of the proceeds to be collected from the litigation investments comprising the Contract Pool under the Plan. These are the same operative facts that gave rise to the allegations of fraud that they could have investigated and discovered preconfirmation.

Notwithstanding the truthfulness of the allegations that certain litigation proceeds were uncollectible, the issue regarding the Debtors' projections was litigated at the Disclosure Statement hearing and later resolved through Plaintiffs' settlement and acceptance of the Plan, but Plaintiffs chose to raise the acts of new fraud almost two years after confirmation of the Plan.

*(iii) the relief sought would upset the confirmed plan of reorganization and negatively affect innocent parties and creditors*

With respect to the third factor, if Plaintiffs were to go forward with this litigation and prevail, they would upset the Plan's arrangement to release Defendants, Plaintiffs and others from any and all claims, known and unknown, liquidated and unliquidated, and that this was one of the essential conditions for the Plaintiffs to receive lien rights and control over the Contract Pool. Clearly, the Movants would not have released the Plaintiffs and other IEP Claimants if they were not to receive the same release from the Plaintiffs and other IEP Claimants. The Plan and the carve out distribution to unsecured creditors were based on the Settlement Agreement. While the adversary proceeding purports not to revoke the confirmation order, it impacts those other IEP Claimants who released their rights under the Plan and the Defendants who relinquished their control over the Debtors' assets in order to provide a distribution to all creditors of the Debtors under the Plan. Unlike *Emmer Brothers,* where the newly discovered assets were not administered under the Plan and did not affect the distribution to creditors, the projections/litigations mentioned in the Postpetition Fraud Claims were considered prior to confirmation. Furthermore, if the releases were avoided and deemed ineffective as to all parties thereto, then all other IEP Claimants could sue the Defendants seeking the same relief as the Plaintiffs. Conversely, by virtue of the mutual releases given by each party, a finding of fraud to procure the releases under the Plan would vitiate the releases given by the Defendants and the Debtors to the Plaintiffs and other IEP Claimants. The impact of significant monetary damages against the Defendants would upset the confirmed Plan. The Plan is an integrated document so that if a material portion were unwound, it would essentially require unwinding the other attendant aspects of the Plan thereby negatively affecting other parties and creditors who received value in the form of releases, carve outs, control and distributions provided for under the Settlement Agreement and the Plan. Contrary to the Plaintiffs' assertion, the Defendants (and the Debtors) also released their claims for bad faith filing against the Plaintiffs in exchange for the settlement.

*(iv) the action is seeking to revoke confirmation or "redivide the pie"*

Lastly, while the impact to the Plan may not be directly clear, it appears that the litigation is an attempt to redivide the pie. The Contract Pool had an estimated value of $30 million (albeit disputed). Plaintiffs are challenging the receivables from Mr. Ravis that total $250,000 by asking damages of at least $4 million. *See Reply,* at 4–5, n. 2 *vis Complaint,* ¶ 28 attached as Ex. 3 to Motion. The Ravis cases account for 2% of the potential collection. *Reply,* at 4–5, n. 2. At the same time, distributions under the Plan have been made where the IEP Claimants have collected millions of dollars by virtue of the parties' settlement. *Reply,* at 5:1–16. If the purported fraud vitiates the releases, it appears that in

turn, the purported fraud vitiates the settlement and the attendant payments made pursuant thereto. Although Plaintiffs argue that the adversary proceeding will not redivide the pie because they seek damages against the Defendants and not more from the Debtors, it would certainly upset the confirmed Plan which was based on the integrated Settlement Agreement.

Plaintiffs rely on the BAP dicta in *In re Circle K* wherein the panel found that if the plaintiffs prevail in their fraud claim, the court can fashion a remedy that does not upset the confirmed Plan, i.e., monetary damages. 181 B.R. at 462. In reaching its decision, the BAP applied the factors of *Newport Harbor*. While in *Circle K,* the BAP found that the claim was "truly independent", the same cannot be said for the instant adversary proceeding applying the facts of this case. Here, the releases apply to the claims being asserted in the complaint (fraud in procuring the acceptance of the Plan and settlement) to which the limitations of § 1144 apply. The action is not independent of the Plan.

Consequently, the litigation is a collateral attack upon the order of confirmation and effectively attempts to revoke the confirmed Plan. Absent a timely appeal, the Plan could only be revoked based on narrow terms by alleging fraud in procuring confirmation of a plan brought within 180 days postconfirmation, which is not the case in this adversary proceeding that was commenced almost two years after confirmation. Section 1144 governs this matter and bars Plaintiffs' action against the Defendants.[4]

**B. This adversary proceeding is also barred by principles of claim preclusion pursuant to the order confirming the Plan.**

■ In the Ninth Circuit, *res judicata* or claim preclusion provides that a "final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action." *Rein v. Providian Financial Corp.,* 270 F.3d 895, 898–99 (9th Cir.2001) citing *In re Baker,* 74 F.3d 906 (9th Cir.1996); *see also Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *In re Kelley,* 199 B.R. 698, 702 (9th Cir. BAP 1996). *Res judicata* is appropriate when:

(1) the parties are identical or in privity;

(2) the judgment in the prior action was rendered by a court of competent jurisdiction;

(3) there was final judgment on the merits; and

(4) the same claim or cause of action was involved in both suits.

*Rein,* 270 F.3d at 899 (citations omitted); *In re Birting Fisheries, Inc.,* 300 B.R. 489, 503 (9th Cir. BAP 2003).

■ The first three elements are easily satisfied. The order confirming the plan is a final judgment on the merits that was rendered by the bankruptcy court which has exclusive jurisdiction to rule on the approval of the Disclosure Statement and confirmation of the Plan. The complaint also involves the same parties who participated in the Plan. Furthermore, the Defendants, as officers and directors of the Debtors, are in privity with the Debtors. *See Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1122 (S.D.N.Y.1986).

■ With respect to the fourth factor, Plaintiffs contend that the Postpetition Fraud Claims constitute "new fraud" which were not discovered until after plan confirmation, and that the claims are

---

4. *See Trulis, et al. v. Barton, et al.,* 107 F.3d 685 (9th Cir.1995), *infra* at p. 322.

based upon postpetition, preconfirmation misrepresentations or omissions that arguably could not have been adjudicated by the court. *Opp'n.*, at 16:1–18. The Ninth Circuit considers four elements in determining whether the same claim or cause of action was involved in both suits: (a) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (b) whether substantially the same evidence is presented in the two actions; (c) whether the two suits involve infringement of the same right; and (d) whether the two suits arise out of the same transaction or nucleus of facts. *Rein*, 270 F.3d at 903 citing *CD Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.1987). The same factors were applied in *In re Birting Fisheries, Inc.*, 300 B.R. 489, 503 (9th Cir. BAP 2003), a case cited by the Plaintiffs.

Unlike *Birting Fisheries* where the release did not release the personal liability of the defendant shareholder, the rights established by the Plan (namely, the mutual releases) will be impaired by the prosecution of the Plaintiffs' action. The parties understood that the release provision of the Plan released any and all claims against the Debtors, their agents, *officers and directors*, to the extent provided for in the Plan and served as a bar from asserting any rights or claims against these entities and individuals notwithstanding the discovery or existence of any additional information or different facts or claims. *Motion*, at 7. In addition, the same factual evidence regarding the Debtors' projections, the amount of the Contract Pool, the reliability of such projections promulgated by the proponents of the Plan, Plaintiffs' reliance on and representations made at the Disclosure Statement hearing and at the time of plan confirmation needed to be presented to the Court prior to its approval of the Disclosure Statement, and its

confirmation of the Plan. The evidence could have been presented had Plaintiffs conducted an appropriate and thorough investigation. They cannot benefit from their own delay in conducting whatever due diligence they decided to conduct or not to conduct prior to confirmation of the Plan.

As in *Kelley*, a case cited by the Plaintiffs, "a confirmed Plan comprises all matters pertaining to the debtor-creditor relationship that the debtor or any creditor might raise to advance their interests in the proceedings." *In re Kelley*, 199 B.R. at 702. If an action arises out of the same nucleus of operative facts, new theories based on the same facts constitute the same claim or cause of action for res judicata purposes. *Id.* In support of their complaint, the Plaintiffs argued that the misrepresentations/omissions made in the projections directly related to the identity and value of the Contract Pool used in the Plan which induced them to approve the Plan. *See Opp'n.*, at 22:5–13. At the same time, Plaintiffs challenged the same projections before the Plan was confirmed. The entry of the settlement agreement and the order approving the Plan resolved these challenges.

The principles of claim preclusion have been applied consistently by the Ninth Circuit. Recently, in *Trulis, et al. v. Barton, et al.*, 107 F.3d 685 (9th Cir.1995), the Ninth Circuit was called upon to end a lawsuit that a bankruptcy court, in a collateral proceeding, held was released and barred. *Trulis* involved several creditors who challenged a provision in a confirmed plan that released consenting creditors' claims against the debtor and its principals. The creditors, postconfirmation, argued that the release provisions were not enforceable under state law for unconscionability, lack of consideration, duress and breach of fiduciary duties. The appel-

late court rejected this argument and held that since the plaintiffs never appealed the bankruptcy court's confirmation order, the order was a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter. *Trulis*, 107 F.3d at 691. Furthermore, the Circuit explained that once a bankruptcy plan is confirmed, it is *binding on all parties* and all questions that could have been raised pertaining to the plan at the time of its confirmation were entitled to res judicata effect. *Id.* (Emphasis added). Res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits in a previous action involving the same parties and claims. *Id.* The Plaintiffs in the present action are raising that the purported fraud, induced them to "settle" and "accept the plan" which, in essence, advances the theory that the plan confirmation was procured by fraud. This is exactly the type of action barred by res judicata and § 1144 of the Code.

Applying the same principles, the 9th Circuit BAP in *In re Birting Fisheries, Inc.*, reached a different conclusion, i.e., that res judicata did not apply. However, in that case, the release provision of the Plan did not address the personal liability of the shareholder-defendant, nor his liability under Norwegian corporate law. Conversely, the release of the Defendants was clearly integrated and provided for in the Plan. The settlement agreement required the settlement and the attendant release be incorporated in the Plan. Furthermore, Defendants correctly stated that the release with respect to the Defendants could have been entered into in a separate contract but the Plaintiffs required that it be included in the Plan.

Additionally, the Plaintiffs cited the United State Supreme Court case of *Holywell Corp. v. Smith*, 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) in support of their opposition. In that case, the U.S. Supreme Court held that even if § 1141(a) binds creditors with respect to claims that arose before confirmation, it does not bind them with regard to *postconfirmation* claims. *Holywell*, however, can be distinguished from the instant case because the Court in *Holywell* dealt with the claim of the United States for taxes due postconfirmation against the disbursing agent for the reorganized debtor pursuant to the Internal Revenue Code. **The claim clearly arose postconfirmation.** Here, the Plaintiffs are asserting fraud based on representations made at the Disclosure Statement stage of the bankruptcy case that affected the Debtors' projections, the Settlement Agreement, and subsequent plan confirmation all of which are **preconfirmation** claims.

 Section 1141 (Effect of confirmation) provides in relevant part:

"(a) Except as provided in subsections (d)(2) and (d)(3) of this section, *the provisions of a confirmed plan bind the debtor,* any entity issuing securities under the plan, *any entity acquiring property under the plan, and any creditor,* equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and *whether or not such creditor,* equity security holder, or general partner *has accepted the plan."* Emphasis added.

Courts have held that once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised that pertain to the plan are entitled to res judicata effect. *Trulis v. Barton*, 107 F.3d 685. Confirmation has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been

raised in the confirmation proceeding. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991).

While there is a strong bankruptcy policy against allowing a chapter 11 plan procured by fraud to be effective, there is an equally strong policy in favor of the finality of a confirmation order. 8 COLLIER ON BANKRUPTCY ¶ 1144.04[2] (Alan N. Resnick and Henry J. Sommer eds., 15th ed.2006) (1979). Implementing the limitations of § 1144, the Court recognizes that fraud, by its very nature, may be difficult to discover and may not be discovered until the 180–day period has passed. The limitation does not aim to condone fraudulent conduct but rather, faced with the difficult task of balancing the two policies of protecting the interest of creditors while at the same time, the rehabilitation of a debtor through its plan of reorganization and providing it with a fresh start, Congress resolved the dilemma when it chose a 180–day deadline for commencing actions for fraud in obtaining plan confirmation under § 1144. *Id.* While the cut-off date may occasionally lead to an inequitable result, it is justified by the need for finality.

Notwithstanding the foregoing, the Court does not find that its decision to dismiss this action produces an inequitable result. While fraud may be difficult to discover and as in this case, may not have been discovered until the 180–day period has passed, the alleged fraud was certainly discoverable before the 180–day period has passed. The facts from which the Plaintiffs could have investigated "new fraud" allegedly committed by the Defendants were available to the Plaintiffs preconfirmation and during the time limits of § 1144. The facts were litigated during the course of confirming the Debtors' Plan and considered when the parties decided to settle and release one another from any liability. Commencing an action two years

after Plan confirmation will place the events that occurred in the meantime in "limbo". Plaintiffs have received the benefits of their bargained-for settlement and release, the time limitation for commencing an action against them has expired, and they continue to manage the Contract Pool. An unappealed order confirming a plan is res judicata with regard to all matters dealt with by the plan including, for purposes of this case, the projections relating to the Contract Pool reserved to fund the Plan. *See* 8 COLLIER ¶ 1144.04[2].

Consistent with § 1144 and the principles of claim preclusion, the Plaintiffs are also bound by the terms of the Plan under § 1141 (which they admit by not suing the Debtors or seeking to appeal the confirmation order). The principles of res judicata apply in this case and, therefore, the principle of claims preclusion bars the Plaintiffs' claims for fraud.

### C. Plaintiffs cannot seek to attack the Plan for mistake, inadvertence, excusable neglect, fraud, newly discovered evidence pursuant to FRCP 60.

A Rule 60(b) motion based upon mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, misrepresentation or other misconduct, made applicable in bankruptcy adversary proceedings through FRBP 9024, must be made within one year after the judgment, order or proceeding was entered or taken. This adversary proceeding is clearly outside of Rule 60's limitation. More importantly, FRBP 9024 provides in pertinent part, "Rule 60 applies in cases under the Code except that ... (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144...." The time to appeal the order confirming the Plan or order approving the Disclosure Statement expired long ago.

### D. The facts of the case do not warrant the issuance of a contempt sanction against Plaintiffs.

Plaintiffs allege that the Movants' request for sanctions based on contempt is procedurally defective. Pursuant to Local Bankr.Rule 9020–1:

"Unless otherwise ordered by the court, contempt proceedings are initiated by filing a motion that conforms with Local Bankruptcy Rule 9013–1(a) and a proposed order to show cause re contempt. The motion shall be served on the responding party which shall have 5 court days to object to the issuance of the order to show cause. The proposed order shall clearly apprise the party to whom it is to be directed that such party shall show cause, if any there is, why that party should not be held in contempt for the allegedly contemptuous conduct. The allegedly contemptuous conduct shall also be clearly identified in the proposed order (not just by reference to the content of the motion). The proposed order must have blank spaces in which the court may fill in the date, time and location of the hearing and the dates by which a responsive pleading and reply thereto are due.

If the court receives no responsive pleadings to the motion for the order to show cause within the time allowed, it may conclude that there are no objections to the issuance of the order to show cause. No hearing on the motion for issuance of the order to show cause will be held unless the court so orders. If the motion for order to show cause is granted without a hearing, the court will issue and forward to the moving party the order to show cause setting the date and time of the contempt hearing. Unless the court orders otherwise in the order to show cause, the moving party shall serve the issued order to show cause on the respondent not later than 21 days before the date set for the hearing. Entities not previously subject to the personal jurisdiction of the court shall be personally served. All other persons may be personally served or may be served by mail in accordance with F.R.B.P. 7004. Any uncontroverted facts established by declaration may be treated as true. The court may limit testimony to controverted facts only."

Here, Movants contend that the "Plaintiffs filed the two complaints [knowing] that their claims were barred. Yet they pursued them anyway." *Motion,* at 15:21–28. "This kind of flagrant, knowing and repeated violation of the terms of the Confirmation Order justifies an award of sanctions if only to compensate the Named Defendants for the costs they incurred in opposing this conduct." *Id.* The Movants, however, failed to submit the corresponding proposed order to show cause required by Local Bankruptcy Rule 9020–1. While the motion alleges the conduct as contemptible, only the firm Bird Marella Boxer Wolper Nessim Drooks & Lincenberg, PC was served with the motion. Neither Jeffer Mangels nor the Plaintiffs, individually, were served with it.

██ A bankruptcy court's decision to deny or grant a motion for contempt sanctions is reviewed by an abuse of discretion standard. *Ramirez v. Fuselier (In re Ramirez),* 183 B.R. 583, 586 (9th Cir. BAP 1995); *Johnston Env't'l Corp. v. Knight (In re Goodman),* 991 F.2d 613, 620 (9th Cir. 1993) (bankruptcy court should exercise its discretion in deciding whether to deny civil contempt sanctions). A bankruptcy court's inherent powers to sanction are recognized through the application of 11 U.S.C. § 105. Section 105(a) authorizes only such remedies as are "necessary or appropriate to carry out the provisions of this title."

■ Civil contempt under § 105 is the normal sanction for violation of the discharge injunction. 4 *COLLIER* ¶ 524.02[2][c]. "Civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary." *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir.2002) (citations omitted).

■ In the instant action, Movants did not thoroughly discuss the basis for finding contempt although the Motion suggests that contempt is sought for Plaintiffs' violation of the discharge injunction pursuant to the confirmed Plan. For violation of the discharge injunction: "[T]he Movants must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996, 1007–1010 (9th Cir.2006) (citations omitted).

■ Applying this standard, however, the discharge injunction under § 524 applies only against the Debtors. The Plaintiffs' cause of action does not disturb the Debtors' discharge under the confirmed Plan and does not violate the injunction of § 524 because the complaint was filed against the Defendants. Consequently, the intended action would not have violated the injunction in connection with the Debtors.

The Defendants have not demonstrated such contemptuous conduct that would compel the issuance of an Order to Show Cause re contempt. The complaint is directed against the Debtors' directors and officers for monetary damages and not against the Debtors. The law clearly states that the discharge injunction is effective only against the Debtors and the Debtors' property and does not affect the liability of any co-debtor or third party. As such, the Court should not use its § 105(a) powers to grant a relief that is not available to the Defendants.

### III. CONCLUSION

For the reasons and authorities stated herein, this Court grants the Motion to Dismiss the Complaint for Fraud and denies the Motion for Contempt Sanctions. This Memorandum of Decision shall constitute the Court's Findings of Fact and Conclusions of Law. A separate order consistent with this Memorandum shall be entered.

### ORDER DISMISSING THE ADVERSARY PROCEEDING AND DENYING MOTION FOR CONTEMPT SANCTIONS

Defendants' Morton C. Reed, Stanley Weiner, and David Cohen (collectively hereinafter, the *"Defendants"*) Motion to Dismiss Complaint for Fraud by Defendants and for Contempt Sanctions (*"Motion"*) came on for a hearing before this Court on October 31, 2006 at 9:00 a.m. Pursuant to this Court's findings of fact and conclusions of law contained in this Court's Amended Memorandum of Decision Dismissing Adversary Proceeding and Denying Motion for Contempt Sanctions,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Defendants' motion to dismiss the above-entitled complaint is granted but their request for sanctions based on contempt is denied.